AMOS STONE *vs.* FRANKLIN O. REED & others.

Suffolk.    March 20, 1890. — September 4, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Equity — Bill of Interpleader — Title of Plaintiff.*

A bill of interpleader alleged that the plaintiff was the treasurer of a corporation organized over thirty years before, to manage and control lands owned by the corporators in severalty; that it had sold and conveyed the lands, and in payment thereof certain bonds "came into the hands of this plaintiff"; that a part of these bonds were divided among the corporators in proportion to their former ownership; that a creditor of the corporation was seeking to reach the bonds remaining in the plaintiff's hands in payment of his claim; and that certain of the corporators had also demanded them in behalf of all, on the ground that, as they had never formally conveyed the lands to the corporation, the bonds were their undivided property.  *Held,* that these allegations did not show that the plaintiff's title to the bonds was of such a character as to enable him to maintain the bill.

BILL OF INTERPLEADER, filed in this court by Amos Stone, against Franklin O. Reed, Francis A. Brooks, and Joseph E. Bartlett, alleging that certain land and flats were, on January 16, 1852, owned by sundry persons in severalty, who on that

day united under a written agreement for the purpose of holding the said land and flats as tenants in common and undivided as to the whole premises, in proportion to the length of shore line owned by each, and for the purpose of being formed or organized into a corporation, which was done under the name of the Mystic River Corporation, as authorized by the St. of 1852, c. 105, granting its charter; that the land and flats of the said proprietors were thereupon taken possession of and controlled and managed by the corporation, as if the same had become its property, although no written conveyance of the said lands to the corporation was ever made or executed by the proprietors or by any of them; that no shares of capital stock were ever issued, and no subscriptions therefor in money were ever obtained, as allowed by the said act; that the share or interest of each of the original proprietors in the lands so commingled by them was duly ascertained and determined, and certificates were issued to the several proprietors in the name of the corporation, setting forth the proportion or ratio of the ownership of each in the whole, the whole estate being for that purpose divided into 2,038 equal parts; that these certificates, showing the fractional ownership in common and undivided of these flats and lands, were assigned and transferred from time to time, and used by the proprietors to convey the title of the lands and flats, the property itself always being treated by the corporation and the proprietors as real estate, and not as shares of corporate stock or personal estate of any description; that by the St. of 1887, c. 278, the Boston and Lowell Railroad Corporation was authorized to purchase these lands or flats, or such of them as still remained in the possession, control, and management of the Mystic River Corporation, and a conveyance of the lands was made, executed, and delivered to the railroad corporation by or in the name of the Mystic River Corporation on August 2, 1887, under the authority or supposed authority of the said act; that it was provided in and by the said act of 1887, that upon the execution of such conveyance the Mystic River Corporation should cease to exist as a corporation, except as provided in and by the Pub. Sts. c. 105, § 41; that the plaintiff is advised and believes that thereupon the said corporation did cease to exist on August 2, 1887, except

as aforesaid; that at and before the time of such sale and conveyance the plaintiff was the treasurer of the said Mystic River Corporation and one of its directors, and that payment for said land and flats was made in the notes or bonds of the said railroad corporation of $1,000 each, to the number in all of 325, of the value of $325,000 or thereabouts; that said bonds came into the hands of this plaintiff; that after providing for and paying all admitted indebtedness of the corporation outstanding at the time of the conveyance, the said notes or bonds were divided among the proprietors or certificate holders in proportion to the number of rights or undivided 2,038 parts of the property owned by them respectively; that there still remained in his hands and possession of the said notes or bonds sixty-one pieces of $1,000 each; that the defendant Bartlett, on August 2, 1887, soon after the execution of the said conveyance, brought a bill in equity in this court against the plaintiff and the said corporation, wherein he claimed to hold the plaintiff accountable to him as the alleged creditor of the defendant corporation for the said notes or bonds remaining in this plaintiff's hands and possession, and sought to prohibit and prevent the plaintiff from parting with them to any other person or party; that the suit of the said Bartlett was still pending and undetermined in this court; that Franklin O. Reed and Francis A. Brooks, being proprietors or holders of certificates issued as aforesaid by the corporation, claiming to act in behalf not only of themselves but of all other like certificate holders excepting Bartlett, made a demand on the plaintiff for the said notes or bonds, except the share of Bartlett, claiming the said notes or bonds as the property of themselves and the other certificate holders represented by them, and denying all right of Bartlett as an alleged creditor of the corporation to require the plaintiff to retain or hold the notes or bonds for his use and benefit, or to deliver them over to Bartlett under his said legal process or proceeding; and that the plaintiff was ready and willing to deliver the said notes or bonds remaining in his hands to whichever of the defendants claiming the same are or shall by this court be found entitled thereto. The bill also denied collusion, and prayed that Reed and Brooks, and Bartlett, might be decreed to interplead and settle their rights to the said notes or bonds.

Annexed to the bill were copies of the articles of association entered into by the proprietors of the flats on January 16, 1852, and of the St. of 1852, c. 105, §§ 1, 6, and the St. of 1855, c. 481, both relating to the Mystic River Corporation.

The defendant Bartlett demurred to the bill for want of equity; *Devens*, J. sustained the demurrer, and dismissed the bill; and the plaintiff appealed to the full court.

*A. S. Hall*, for the plaintiff.

*A. E. Pillsbury*, for the defendant Bartlett.

W. ALLEN, J. The bill alleges that three hundred and twenty-five bonds of the Boston and Lowell Railroad Corporation, of one thousand dollars each, came into the hands of the plaintiff, and that sixty-one of them remain in his hands and possession; that the defendant Bartlett has brought a bill in equity against the plaintiff and the Mystic River Corporation to reach and apply these sixty-one bonds upon a debt alleged to be due to him from the corporation; and that the other defendants claim that the bonds are their individual property, and have demanded them of the plaintiff. The bill is defective in not showing any title in the plaintiff to the relief sought. Assuming that, if he held the bonds as a stakeholder, he would have a right to require the defendants to interplead, as in *Cobb* v. *Rice*, 130 Mass. 231, the bill must show what his relation to the bonds is, and that it is such as to entitle him to the relief. The only direct allegation in that respect is, " that said bonds came into the hands of this plaintiff." This is consistent with a tortious possession, or with a possession as bailee or agent of one of the parties defendant. The absence of a direct allegation of the character of the plaintiff's possession of the bonds might be cured if there were allegations in the bill which afforded an inference that his possession was that of a stakeholder, or such as to entitle him to maintain a bill of interpleader. Upon reference to the allegations of the bill, it appears that no inference can be drawn from them in regard to the character of the plaintiff's possession of the bonds, unless one which shows that he has no title to the relief sought.

The bill alleges that the Boston and Lowell Railroad Corporation bought of the Mystic River Corporation certain land and flats, and that payment therefor was made by the three hundred

and twenty-five bonds referred to; that the plaintiff was the treasurer and one of the directors of the Mystic River Corporation; and that the bonds came into his hands. The bill further alleges, that, after providing for the admitted indebtedness of the corporation, the bonds were divided among the proprietors or certificate holders, (who were the corporators,) and that the sixty-one bonds referred to remained in the hands and possession of the plaintiff. The only inference which can be drawn from these allegations is, that the bonds were the property of the Mystic River Corporation, and were received as its property by the plaintiff, as its treasurer, and that the sixty-one bonds not divided are held by the plaintiff as treasurer of the corporation, as its property. This inference is not at all affected by the allegations of the bill in respect to the claim to the bonds made by the defendants, the proprietors or certificate holders, or corporators. That claim, as stated in the body of the bill, is substantially this: that in the year 1852 certain owners in severalty of flats made an agreement for the purpose of holding the same in common in certain proportions, and of forming a corporation; that a corporation was accordingly formed, under a special charter, which took possession of the lands and flats of the proprietors, and controlled and managed them as its own property, but that no conveyance was made by the proprietors to it; and that certificates were issued by the corporation to the proprietors showing the proportion of the common property which belonged to each.

The claim of the defendants, as stated, is that the proceeds of the sale belong to them individually, because they did not make a formal conveyance to the corporation composed of themselves when it took possession of the flats more than thirty years before. It is obvious that the allegation that the defendant corporators claim a title paramount to that of the corporation cannot affect the allegations, direct or implied, that the sale authorized by the Legislature was of the property of the corporation, that it was sold by the corporation and conveyed by it as its property, and that the bonds were received in payment to the corporation by the plaintiff as its treasurer, as allegations affecting the character in which the plaintiff received and holds the bonds; and it is unnecessary to consider whether the point urged by the defendant Bartlett, that the exhibits contradict the allegations in

the body of the bill, and show that the title and interest in the property sold was in the corporation, can be sustained, nor what effect it would have, if sustained, on the demurrer to the bill. It is too plain for argument, that if the bill alleges that the plaintiff holds the bonds as treasurer of the corporation, and that the defendant corporators claim by a title paramount to the corporation, it cannot be maintained. Without deciding other objections to the bill made in argument, we sustain the demurrer, upon the ground that the bill contains no averments in respect to the possession of the plaintiff which show that he is entitled to maintain the bill.          *Decree affirmed.*

## MEMORANDUM.

On the fourth day of September, 1890, Mr. Justice FIELD was appointed Chief Justice, in place of Chief Justice MORTON, resigned, and took his seat upon the bench as such on the ninth day of the same month, at the law term then held at Pittsfield in the County of Berkshire.